IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GEORGIE PIZARRO, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | NO.  26-2165 |
| | : | |
| C/O LOFTIS, | : | |
| Defendant. | : | |

**MEMORANDUM**

**MURPHY, J.**                                                                                   **June 25, 2026**

*Pro se* plaintiff Georgie Pizarro brings this civil action pursuant to 42 U.S.C. § 1983, naming one defendant, a corrections officer identified as "C/O Loftis."  Mr. Pizarro also seeks leave to proceed *in forma pauperis*.  For the following reasons, the court will grant Mr. Pizarro's motion for leave to proceed *in forma pauperis* (DI 4), partially dismiss the complaint (DI 1) on statutory screening pursuant to 28 U.S.C. § 1915, and provide Mr. Pizarro with an opportunity to file an amended complaint before proceeding to service on the claim that survives screening.

## I.   FACTUAL ALLEGATIONS[1]

Mr. Pizarro, a pretrial detainee currently housed at Curran-Fromhold Correctional Facility, raises claims based on events that occurred while he was detained at the Philadelphia Industrial Correctional Center ("PICC").  (*See* Compl. at 1; *see also See Commonwealth v. Pizarro*, No. CP-51-CR-0005673-2025 (C.P. Phila.).)  He alleges that on the afternoon of

---

[1] The facts set forth in this memorandum are taken from Mr. Pizarro's complaint (DI 1). The court adopts the pagination assigned to the complaint by the CM/ECF docketing system. Grammar, spelling, and punctuation errors are cleaned up where necessary.  Additionally, the court includes facts reflected in publicly available state court records, of which this court may take judicial notice.  *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

1

February 24, 2026, he attempted to intervene when defendant C/O Loftis was "getting frustrated" with another inmate. (Compl. at 2.) He attempted to explain to C/O Loftis that the other inmate "was going through some family issues," but C/O Loftis told Mr. Pizarro that "it had nothing to do with him." (*Id.*) Another C.O. attempted to "calm down" the situation, but C/O Lofits became "more hyper with his hand motions and was verbally being disrespectful" and calling Mr. Pizarro and the other inmate "names." (*Id.* at 3.) Mr. Pizarro "started to walk away to go get on the phone to call his family and [the Prison Rape Elimination Act] Hotline." (*Id.*) When C/O Loftis noticed Mr. Pizarro walking away, he "started to yell" at Mr. Pizarro, who then said that "Loftis was just miserable and was taking his anger out" on him and the other inmate. (*Id.*) Then, "out of nowhere []Loftis grabbed []Pizarro by the back of his neck and hair and lifted him into the air, choke[d and] then slam[med] Pizarro['s] head into the floor repeatedly," also "placing a great amount of pressure on [his] ribs" with his knee. (*Id.* at 3-4.) C/O Loftis later struck Mr. Pizarro on "his face with a closed fist multiple times," until other officers arrived to intervene. (*Id.* at 4.) Mr. Pizarro asserts that he and the other inmate were taken "to the hole without any medical attention," and that he was in "horrible pain" and suffered a broken rib, "fracture[d] hip bone, [and] lower back pain" that went untreated. (*Id.*)

Mr. Pizarro further states that "Lt. Sam" and "Warden Patterson" failed to respond to his complaints about C/O Loftis and other issues including "open drug use in the dayroom," and "sanitary [and] adequate living conditions." (*Id.* at 5.) He alleges that Warden Patterson "fail[ed] to review camera footage" and otherwise violated his due process rights in unspecified ways related to misconduct proceedings. (*Id.*) Mr. Pizarro also alleges that at some unspecified point, C/O Loftis told other inmates on his cell block about his "criminal records" and

"encourage[d] inmates to threaten, [physical] harm[,] and intimidate [Pizarro] to check into protective custody."  (*Id.*)

Mr. Pizarro brings claims for violations of his constitutional rights, and seeks declaratory and injunctive relief, as well as money damages.  (*Id.* at 6-7.)

## II.   STANDARD OF REVIEW

Because it appears that Mr. Pizarro is incapable of prepaying the fees to commence this civil action, the court will grant leave to proceed *in forma pauperis*.[2]  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the court to dismiss Mr. Pizarro's complaint if it fails to state a claim.  The court applies the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), that is, whether a complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021).  At the screening stage, the court will accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and "ask only whether that complaint, liberally construed, contains facts sufficient to state a plausible claim."  *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (cleaned up), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024).  Conclusory allegations do not suffice.  *See Iqbal*, 556 U.S. at 678; *see also*

---

[2] Because Mr. Pizarro commenced this case while incarcerated, he will be obligated to pay the full filing fee in installments in accordance with the Prison Litigation Reform Act.  *See* 28 U.S.C. § 1915(b).

*Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) ("A plaintiff cannot survive dismissal just by alleging the conclusion to an ultimate legal issue.").

As Mr. Pizarro is proceeding *pro se*, the court construes the allegations in the complaint liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). The court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F. 3d at 245). An unrepresented litigant "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants." *Id.*

In that regard, a complaint may be dismissed for failing to comply with Federal Rule of Civil Procedure 8. *Garrett v. Wexford Health*, 938 F.3d 69, 91 (3d Cir. 2019). Rule 8 requires a pleading to include a "short and plain statement showing that the pleader is entitled to relief," as well as a statement of the court's jurisdiction and a demand for the relief sought. Fed. R. Civ. P. 8(a). In determining whether a pleading meets Rule 8's "plain" statement requirement, the court should "ask whether, liberally construed, a pleading 'identifies discrete defendants and the actions taken by [the named] defendants' in regard to the plaintiff's claims." *Garrett*, 938 F.3d at 93 (citation omitted). "Naturally, a pleading that is so vague or ambiguous that a defendant cannot reasonably be expected to respond to it will not satisfy Rule 8." *Id.* (cleaned up). The important consideration for the court is whether, "a pro se complaint's language . . . presents cognizable legal claims to which a defendant can respond on the merits." *Id.* at 94.

## III.   DISCUSSION

Mr. Pizarro asserts violations of his constitutional rights. The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "To state a claim

4

under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also Jutrowski v. Township of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." (quoting *Iqbal*, 556 U.S. at 677)); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 10 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

### A.    Excessive Force Claim Against Loftis

The court understands Mr. Pizarro to lodge a claim for excessive force against the lone named defendant, C/O Loftis, and that Mr. Pizarro was a pretrial detainee at the time of these events. Excessive force claims brought by convicted prisoners are analyzed under the Eighth Amendment's Cruel and Unusual Punishment Clause, but such claims brought by pretrial detainees are analyzed under the Fourteenth Amendment's Due Process Clause. *See Kingsley v. Hendrickson*, 576 U.S. 389, 400-01 (2015); *Jacobs v. Cumberland County*, 8 F.4th 187, 193-94 (3d Cir. 2021). The distinction is significant because the "language of the two Clauses differs, and the nature of the claims often differs." *Kingsley*, 576 U.S. at 400. When a convicted prisoner brings an Eighth Amendment excessive force claim against a prison official, the court must consider "whether force was applied in a good-faith effort to maintain or restore discipline,

5

or maliciously and sadistically to cause harm." *Hudson v. McMillan*, 503 U.S. 1, 7 (1992). The malicious-and-sadistic standard for an Eighth Amendment claim is subjective, but an objective standard is applied to a Fourteenth Amendment claim. *See Kingsley*, 576 U.S. at 400 (explaining that the reason for the lesser standard in a Fourteenth Amendment claim is that "pretrial detainees (unlike convicted prisoners) cannot be punished at all, much less 'maliciously and sadistically'"); *Jacobs*, 8 F.4th at 194 ("In 2015, the Supreme Court clarified that the subjective Eighth Amendment standard does not apply to pretrial detainees."). For a pretrial detainee to state a due process violation based on excessive force, he must allege plausibly that "that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley*, 576 U.S. at 396-97. The following circumstances "may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.* at 397. Whether unreasonable force has been used against a detainee requires "careful attention to the facts and circumstances of each particular case." *Jacobs*, 8 F.4th at 194 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Courts analyze such claims "from the perspective of a reasonable officer on the scene" while keeping in mind that decisions about safety and order require the expertise of correctional officers, "who must have substantial discretion to devise reasonable solutions to the problems they face." *Id.* at 195 (quoting *Kingsley*, 576 U.S. at 397 & 399).

Mr. Pizarro pleads that there was a verbal altercation between himself, C/O Loftis, and another inmate, and that C/O Loftis resorted to physical violence, including slamming Mr. Pizarro's head against the floor, punching, and choking him. These allegations are sufficient at

this stage to support a claim for excessive force against C/O Loftis.  However, before the court

directs service of Mr. Pizarro's claims on C/O Loftis, Mr. Pizarro will be provided with an

opportunity to amend in order to address other issues not fully developed in his complaint.

For example, Mr. Pizarro alleges in conclusory fashion that C/O Loftis also violated his

constitutional rights by "showing [Pizarro's] criminal records to inmates housed" on Mr.

Pizarro's cell block, making threats to Mr. Pizarro's life, and "encourage[ing] inmates to

threaten, physically harm[,] and intimidate [Pizarro] to check into protective custody."  (Compl.

at 5-6.)  He does not assert that he suffered any specific harm as a result, he simply alleges in

conclusory fashion that it "caused . . . pain, suffering, personal injuries, mental and emotional

distress."  (*Id.* at 6.)  He fails to provide any factual details about C/O Loftis's alleged disclosure

of his records or explain why his criminal records would cause others to harm him, nor does he

provide any facts about any harm, such as attacks by other inmates, so these conclusory

allegations fail to state a claim to relief.  *See Iqbal*, 556 U.S. at 678.

**B.      Claims Against Other Individuals Not Named as Defendants**

Mr. Pizarro listed only C/O Loftis as a defendant in the caption of his handwritten pro se

complaint and in the section labeled "Parties."  (*See* Compl. at 1.)  However, it appears that he

might have intended to assert claims against other individuals not expressly named as

defendants.  (*See id.* at 5-6.)  A complaint may be dismissed for failing to comply with Federal

Rule of Civil Procedure 8.  *Garrett*, 938 F.3d at 91.  To conform to Rule 8, a pleading must

contain a short and plain statement showing that the plaintiff is entitled to relief.  *See Travaline*

*v. U.S. Supreme Court*, 424 F. App'x 78, 79 (3d Cir. 2011) (*per curiam*) (quoting Fed. R. Civ. P.

8(d)(1)).  The United States Court of Appeals for the Third Circuit explained that in determining

whether a pleading meets Rule 8's "plain" statement requirement, the court should "ask whether,

7

liberally construed, a pleading 'identifies discrete defendants and the actions taken by these defendants' in regard to the plaintiff's claims." *Garrett*, 938 F.3d at 93 (citation omitted). A pleading may still satisfy the "plain" statement requirement "even if it is vague, repetitious, or contains extraneous information" and "even if it does not include every name, date, and location of the incidents at issue." *Id.* at 93-94. The important consideration for the court is whether, "a pro se complaint's language . . . presents cognizable legal claims to which a defendant can respond on the merits." *Id.* at 94.

However, "a pleading that is so 'vague or ambiguous' that a defendant cannot reasonably be expected to respond to it will not satisfy Rule 8." *Id.* at 93; *see also Gowans v. Axsom,* No. 25-2070, 2025 WL 2848907, at *1 (3d Cir. Oct. 8, 2025) (*per curiam*) ("Fundamentally, Rule 8 requires that a complaint provide fair notice of what the claim is and the grounds upon which it rests." (quoting *Garrett*, 938 F.3d at 92)). Rule 8 "operates in tandem with . . . Rule 10," which requires that a pleading contain a caption with the court's name and the names of the parties, and that claims be listed in numbered paragraphs. *Fabian v. St. Mary's Med. Ctr.*, No. 16-4741, 2017 WL 3494219, at *3 (E.D. Pa. Aug. 11, 2017) (citing Fed. R. Civ. P. 10). "The purpose of these rules is to make clear to the Court and the defendants the factual basis for a plaintiff's claims so that the defendants can meaningfully respond to those claims." *Segreaves v. Haines,* No. 24-4356, 2024 WL 5008503, at *4 (E.D. Pa. Dec. 5, 2024) ("The purpose of Rule 10 is to create clarity in pleadings, which allows a defendant and the Court to determine whether there are sufficient facts to support a claim entitling a plaintiff to relief." (citation omitted)).

To the extent that Mr. Pizarro intended to sue any person other than C/O Loftis, his complaint fails to comply with Rules 8 and 10 as to any such claims, because he does not name them in the caption, does not "'identif[y] discrete defendants and the actions taken by these

8

defendants' in regard to [his] claims," or "present[] cognizable legal claims to which [those] defendant[s] can respond on the merits." *Garrett*, 938 F.3d at 93-94 (citation omitted). Moreover, Mr. Pizarro's assertions about the actions of, for example, Lt. Sam and Warden Patterson, do not support a claim to relief, in any event. Mr. Pizarro appears to make two main assertions against these individuals: that they were in charge of C/O Loftis or some other aspect of PICC, and that they failed to respond to or process his grievances about C/O Loftis's use of force and various other issues such as "open drug use in the dayroom." (Compl. at 5.)

Generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation. *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) ("Saisi asserted that some defendants were 'in charge of agencies that allowed this to happen,' and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.' However, a director cannot be held liable 'simply because of his position as the head of the [agency].'" (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005)). Also, liability under § 1983 cannot be predicated on a *respondeat superior* basis. *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015); *Robinson v. Delbalso*, No. 22-2378, 2022 WL 17248100, at *2 (3d Cir. Nov. 28, 2022) (*per curiam*).

Rather, "[s]uits against high-level government officials must satisfy the general requirements for supervisory liability." *Wharton v. Danberg*, 854 F.3d 234, 243 (3d Cir. 2017). There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and

9

maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Chavarriaga*, 806 F.3d at 227.

The first type of liability includes a failure to supervise, however, a plaintiff asserting such a claim must "identify a supervisory policy or practice that the supervisor failed to employ, and then prove that: (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory practice or procedure." *Barkes*, 766 F.3d at 317; *see also Chavarriaga*, 806 F.3d at 227. A supervisory claim requires "a showing that there was an actual constitutional violation at the hands of subordinates" before finding liability on the part of the supervisor prison official. *Allen v. Eckard*, 804 F. App'x 123, 127 (3d Cir. 2020) (*per curiam*) (concluding that failure to train and supervise claims asserted against supervisor defendants were meritless where the plaintiff failed to make a plausible showing of an underlying constitutional violation). To set forth a claim for supervisory liability under the policy-and-practice strand of supervisory liability, a plaintiff "must identify the supervisor's specific acts or omissions demonstrating the supervisor's deliberate indifference to the inmate's risk of injury and must establish a link between the supervisor, the act, and the injury." *Chavarriaga*, 806 F.3d at 227.

A prison official's participation in the grievance process, failure to take action in response to a prisoner's letter about the conditions in which he is confined, or failure to act after becoming aware of an employee's actions, is, without more, an insufficient basis upon which to base those officials' personal involvement in the underlying violations. *See Murray v. McCoy*, No. 23-2582, 2024 WL 1328231, at *3 (3d Cir. Mar. 28, 2024) ("Superintendent Ransom's awareness of Murray's allegations concerning C.O. McCoy, without more, is insufficient to establish personal involvement" (citing cases)); *Folk v. Prime Care Med.*, 741 F. App'x 47, 51 (3d Cir. 2018) (*per curiam*) ("Although some of these defendants were apparently involved in responding to some of Folk's prison grievances, there are no allegations linking them to the underlying incidents and thus no basis for liability based on those later grievance reviews."); *Curtis v. Wetzel*, 763 F. App'x 259, 263 (3d Cir. 2019) (*per curiam*) ("The District Court properly determined that Defendants [Superintendent] Wenerowicz, Lewis, and Shaylor – who participated only in the denial of Curtis' grievances – lacked the requisite personal involvement [in the conduct at issue]."); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (*per curiam*) (defendants' alleged inappropriate responses to plaintiff's "later-filed grievances" were insufficient to establish those defendants' personal involvement in underlying wrongs); *Burk v. Crowe*, No. 19-5792, 2020 WL 42758, at *4 (E.D. Pa. Jan. 3, 2020) (plaintiff's "general allegation that he 'wrote to' Crowe, Cassidy, Budd, and Lagana 'when this happen[ed]' is too vague and undeveloped to state a plausible basis for liability against these individuals"); *see also Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (evidence that high level official was sent a copy of documents related to prisoner's claim and official's lack of response did not establish personal involvement, nor did involvement of officials who only reviewed and denied prisoner's grievances); *Robinson v. Delbalso*, No. 22-2378, 2022 WL 17248100, at *2 (3d. Cir. Nov. 28,

11

2022) (*per curiam*) ("Contrary to Robinson's assertions, awareness of a grievance or complaint after the allegedly unconstitutional conduct has occurred, without more, is insufficient to establish personal involvement.").

Moreover, claims based on the handling of prison grievances fail because "prisoners do not have a constitutional right to prison grievance procedures." *Gerholt v. Wetzel*, 858 F. App'x 32, 34 (3d Cir. 2021) (*per curiam*) (citing *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) and *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (*per curiam*)).  Accordingly, allegations such as those raised by here predicated on failures of the grievance process or improper handling of or response to grievances do not give rise to a constitutional claim.  *See Woods v. First Corr. Med. Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011) (*per curiam*) ("We agree with the District Court that because a prisoner has no free-standing constitutional right to an effective grievance process, Woods cannot maintain a constitutional claim against Lucas based upon his perception that she ignored and/or failed to properly investigate his grievances." (internal citation omitted)); *Burnside v. Moser*, 138 F. App'x 414, 416 (3d Cir. 2005) (*per curiam*) (explaining that "[i]nmates do not have a constitutionally protected right to the prison grievance process" and that "a state grievance procedure does not confer any substantive constitutional right upon prison inmates" (internal quotations and citations omitted)).

In sum, Mr. Pizarro fails to clearly name anyone other than C/O Loftis as a defendant, and his bare conclusory allegations about the conduct of other individuals related to supervision and participation in the grievance process fall far short of stating any claim to relief.  However, Mr. Pizarro also asserts that he did not receive any medical treatment after the alleged assault by C/O Loftis without naming any individual who denied him such treatment, and he makes vague references to other conditions of his confinement.  Accordingly, in an abundance of caution, the

12

court will provide Mr. Pizarro with leave to file an amended complaint to include all of his factual allegations, before proceeding to service on the claim of excessive force against C/O Loftis.

IV.    **CONCLUSION**

For the foregoing reasons, the court will grant Mr. Pizarro leave to proceed *in forma pauperis* and dismiss any claims in his complaint other than his claim for excessive force against C/O Loftis.  Mr. Pizarro may choose to stand on his original complaint, and the court will proceed to service of his excessive-force claim on defendant Loftis, or he may file an amended complaint that includes all his factual allegations.  An appropriate order follows, which provides further information about amendment.